873 F.2d 408
 277 U.S.App.D.C. 195
 Unpublished Disposition
NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
The OFFSHORE TELEPHONE COMPANY, Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents.
 No. 88-1547.
 United States Court of Appeals, District of Columbia Circuit.
 May 15, 1989.
 
 Before WALD, Chief Judge, and HARRY T. EDWARDS and D.H. GINSBURG, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 This cause came to be heard on the petition for review of an order of the Federal Communications Commission and was briefed and argued by counsel. The issues have been accorded full consideration by the court and occasion no need for a published opinion. See D.C.Cir.Rule 14(c). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED, by the Court, that the petition for review is hereby denied.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. See D.C.Cir.Rule 15.
 
 MEMORANDUM
 
 4
 Petitioner Offshore Telephone Company ("Offshore" or "OTC") challenges the Federal Communications Commission's refusal to allow it to join the National Exchange Carrier Association ("NECA"). NECA is an association of local exchange telephone companies which pool their interstate access revenues; these companies are reimbursed from the pool on the basis of their actual costs. Its purpose is to ensure that local telephone subscribers in difficult-to-service areas (e.g., Alaska) can obtain service without paying exorbitant prices. We conclude that the Commission acted reasonably in denying Offshore's application for membership in NECA, and that Offshore's challenges are without merit. We therefore affirm the order of the Commission.
 
 I. Procedural Challenges
 
 5
 Offshore's principal argument is that the FCC did not provide a sufficient opportunity for discovery and cross-examination. The Commission's eventual decision was based in part on its assertion that Offshore provides "little or no 'local', i.e., rig-to-rig calling." 3 F.C.C.Rcd. at 4142 (1988) (Joint Appendix ("J.A.") 6A). Offshore now contends that only South Central Bell Telephone Company ("SCB") could provide information concerning rig-to-rig calls on Offshore's system, since SCB controlled the switch that routed Offshore's telephone traffic. Therefore, Offshore argues, the Commission's failure to provide adequate discovery and cross-examination prevented it from assembling evidence concerning a crucial issue in the case.
 
 
 6
 As the FCC points out, however, Offshore never requested that the Commission provide discovery or cross-examination. Offshore did complain periodically that SCB's control of the switch prevented it from amassing data concerning the volume of rig-to-rig calling. Early on, Offshore requested "that the FCC assist us by supplying this data by sponsoring a traffic study attended by an FCC field representative." J.A. 40A. The FCC replied that "[w]hile OTC is encouraged to conduct a traffic study or to otherwise provide representative usage data, the Commission is unable to provide on-site assistance in such studies (as requested in your letter) because of budgetary restraints." J.A. 83A. Offshore requested SCB to provide data, and was told that SCB did not routinely monitor the switch. The Commission argues that Offshore should have continued its efforts to obtain SCB's assistance; Offshore contends that further overtures to SCB would have been futile. That contention is perhaps plausible, in light of the fact that SCB opposed Offshore's admission to NECA. The dispositive fact, however, is that Offshore made no further effort whatsoever, either to solicit SCB's voluntary assistance or to obtain a Commission order directing SCB to provide the necessary information. We do not believe that Offshore's filings at the FCC, which simply stated that its inability to monitor the switch prevented it from assembling data concerning rig-to-rig calling, can plausibly be read as an implicit request for discovery or cross-examination. We therefore conclude that Offshore's request for discovery and cross-examination is barred by the petitioner's failure to present this argument to the Commission. Offshore bore the principal burden of establishing the factual predicate for its request to join NECA; given the record before it, the agency reasonably concluded that OTC simply does not perform the functions of a local exchange carrier.
 
 
 7
 Offshore contends that it now has the ability to provide evidence showing that its system is in fact used for substantial rig-to-rig calling. Counsel for the FCC, while not conceding that such information would be dispositive, assured us at oral argument that Offshore would not be barred from presenting this evidence as part of a renewed effort to gain membership in NECA. We therefore do not read the Commission's order as imposing any permanent exclusion of OTC, and it is with this understanding that we affirm the decision of the agency.
 
 
 8
 The petitioner also notes that the Commission itself, not the Common Carrier Bureau, must decide "novel questions of fact, law or policy." Offshore asserts that "it was the Bureau and not the Commission itself which in its letter of October 15, 198 established sui generis standards that OTC had to meet to join NECA." Brief for Offshore at 14. We do not believe that this is an accurate characterization. The Bureau directed Offshore to submit responses to ten broad questions concerning the services it provided. Although the Bureau thereby played a large role in shaping the body of factual information that was before the Commission, it was clearly the Commission and not the Bureau which articulated the applicable legal standard and applied that standard to Offshore.
 
 II. Public Interest Considerations
 
 9
 The effect of Offshore's participation in NECA, the Commission stated, "would be that almost all of OTC's costs would be paid by the nation's long distance callers generally." 3 F.C.C.Rcd. at 4143. The agency concluded that no public interest considerations weighed in favor of such a result. That conclusion was well within the agency's discretion.
 
 
 10
 The Commission decided, reasonably in our view, that the services provided by Offshore were more akin to specialized maritime communications service than to local telephone service. Offshore's customers are oil companies and their employees; Offshore's high interstate access rates are a direct result of the peculiar characteristics of their customers' business. The FCC concluded that these business expenses should not be subsidized by long-distance ratepayers generally.
 
 
 11
 The establishment of the NECA pool reflects a policy judgment that, if high interstate access costs are the result of a person's decision to live in a remote area, it is fair to spread those costs throughout the population. The agency declined, however, to extend this policy to customers whose service is costly because of its specialized nature. We see no reason to reject the Commission's decision.
 
 
 12
 For the foregoing reasons, the petition for review is denied.